**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **G.M.**

**No. 24-630** (Wood County CC-54-2023-JA-308)

**MEMORANDUM DECISION**

Petitioner Mother C.M.[1] appeals the Circuit Court of Wood County's October 7, 2024, order terminating her parental, custodial, and guardianship rights to the child, G.M.,[2] arguing that the circuit court erred in denying her motion for a post-adjudicatory improvement period and in terminating her rights. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS initiated the proceedings below after the petitioner gave birth to G.M. in December 2023. According to the DHS, the petitioner's parental rights to two older children were involuntarily terminated in March 2023[3] because she abused substances and exposed the children to an inappropriate caregiver, M.A.,[4] with whom she was in a relationship. Upon G.M.'s birth, the DHS commenced an investigation to determine whether the petitioner's circumstances had changed since the termination of her parental rights. During the investigation, the DHS discovered that, at the time of G.M.'s birth, the petitioner was participating in a residential treatment program and tested negative for all substances upon her admission to the hospital. However, a Child Protective Services ("CPS") worker observed M.A. at the hospital with the petitioner, and the petitioner lied to the worker about M.A.'s identity. As a result, the DHS filed an abuse and neglect

---

[1] The petitioner appears by counsel Wells H. Dillon. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General James Wegman. Counsel Keith White appears as the child's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] On appeal to this Court, we upheld termination of the petitioner's parental rights to those children. *See In re A.M.*, No. 23-242, 2023 WL 7018084, at *3 (W. Va. Oct. 25, 2023) (memorandum decision).

[4] M.A. was deemed an inappropriate person because his parental rights were involuntarily terminated in 2022 for sexually abusing one of his children, among other things. On appeal to this Court, we upheld termination of M.A.'s parental rights as to those children. *See In re J.A.*, No. 22-699, 2023 WL 6144935, at *6 (W. Va. Sept. 20, 2023) (memorandum decision).

1

petition alleging that the child was in imminent danger because the petitioner had not remedied the conditions of abuse and neglect that resulted in the prior terminations of her parental rights.

In March 2024, the court held an adjudicatory hearing. The petitioner admitted that "she had her parental rights involuntarily terminated to two other children for multiple reasons, including failure to protect the children from [M.A.], who previously had his parental rights terminated for sexual abuse of his own children." She further admitted that she continued to have a relationship with M.A., that he was at the hospital with her for the birth of the child, and that she lied to a CPS worker about his identity. Based on her admissions, the court adjudicated the petitioner as an abusing and neglecting parent and G.M. as an abused and neglected child. Shortly thereafter, the petitioner filed a motion for a post-adjudicatory improvement period.

In August 2024, the court held a dispositional hearing and considered the petitioner's motion for an improvement period. The court admitted into evidence reports from the DHS and the court appointed special advocate that recommended termination of the petitioner's parental rights. The reports indicated that the petitioner was involuntarily discharged from the inpatient rehabilitation program in February 2024 due to lying about her whereabouts and various rule violations. The reports further indicated that the petitioner missed seven supervised visits with the child, refused to answer questions about her contacts with M.A., and failed to communicate with the CPS worker since May 2024.

The court then heard from the petitioner, who testified that since her prior termination, she completed an intensive outpatient program and, several months later, entered an inpatient rehabilitation program. She explained that she was involuntarily discharged from the rehabilitation program in February 2024 for noncompliance with the rules, which she claimed were "constantly changing." Additionally, the petitioner stated that she received three drug-related misdemeanor charges in April, July, and October 2023. She explained that she had been participating in the Law Enforcement Assisted Diversion ("LEAD")[5] program since April 2023 but had not yet completed it because she had to restart the program after each drug charge. The petitioner further testified that she was cited for "huffing" a can of air duster one week before the hearing. She denied "huffing" the cannister but acknowledged that "cans" were one of her drugs of choice, that she was in possession of a can of air duster and tried to hide it from a police officer, and that the officer described her as lethargic and confused. Finally, the petitioner admitted that she had missed supervised visits with the child but blamed it on her "broken" phone.

After considering the evidence, the circuit court found that the petitioner's testimony was evasive and not credible and that her phone issues were not legitimate. The court further found that the petitioner had not been "sober or clean for any period of time," missed multiple visits with the child, and failed to complete the LEAD program or the residential drug treatment program. In

---

[5] LEAD "is an evidence-based pre- and post-arrest program aimed at redirecting low level offenders away from incarceration and into treatment centers to receive care for their underlying substance use disorder." W. Va. Office of Drug Control Pol'y, https://dhhr.wv.gov/office-of-drug-control-policy/programs/Documents/2024%20LEAD%20Flyer%20%286%29.pdf (last visited Aug. 22, 2025).

addition, the court found that the child needed continuity in care and caretakers and that a significant amount of time was necessary to integrate the child into a stable and permanent home environment. Based on those findings, the court concluded that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future and that termination of the petitioner's rights was necessary for the child's welfare. As such, the court terminated the petitioner's parental, custodial, and guardianship rights to the child.[6] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred by denying her motion for a post-adjudicatory improvement period because she established that she was likely to fully participate. Indeed, to receive a post-adjudicatory improvement period, a parent must "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B). However, "[t]he circuit court has the discretion to refuse to grant an improvement period when no improvement is likely." *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Here, the record shows that the petitioner was unable to successfully complete the residential drug treatment program because she failed to comply with the rules and that she had not completed the LEAD program because she continued to use drugs. In fact, the petitioner received a citation for abusing an air cannister just *one week* before the dispositional hearing. While the petitioner denied abusing the substance, the court found the petitioner's testimony lacked credibility, and we decline to disturb this finding on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Moreover, the petitioner missed multiple visits with the child. We have explained that "the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996). Thus, the circuit court did not err in denying the petitioner's motion for an improvement period

Finally, the petitioner argues that the circuit court erred by terminating her parental, custodial, and guardianship rights because termination was not necessary for the child's welfare. The petitioner does not challenge the findings that the circuit court made as the basis for the termination of her rights. Instead, she argues that because the father had not yet been adjudicated, the court should have adopted a less restrictive alternative. However, the petitioner fails to recognize that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). For the reasons discussed above, the evidence overwhelmingly supports the circuit court's findings in support of termination of the petitioner's rights, and we find no error in the court's decision not to impose a less restrictive dispositional alternative. *See* W. Va. Code § 49-4-604(c)(6) (permitting termination of parental,

---

[6] The parental rights of the child's unknown father were also terminated. The permanency plan for the child is adoption in his current placement.

3

custodial, and guardianship rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child"); *see also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected" (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980))).

For the foregoing reasons, we affirm the circuit court's October 7, 2024, order.

Affirmed.

**ISSUED**: November 4, 2025

**CONCURRED IN BY**:

Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

**NOT PARTICIPATING**:

Chief Justice William R. Wooton

4